# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 14-119
(Not to be Published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| MICHAEL GRIESHOP, | Filed: June 5, 2015 |
| Petitioner, | |
| v. | Decision on the Record; Insufficient Proof of Causation; Six Month Requirement |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Maximillian J. Muller*, Muller Brazil, LLP, Philadelphia, PA, for Petitioner.

*Jennifer Reynaud*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**ORDER DENYING MOTION FOR DECISION ON RECORD DISMISSING CASE[1]**

On February 10, 2014, Michael Grieshop filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleges that he suffered an injury to his left shoulder as a result of receiving the tetanus-diphtheria-

---

[1] Because this ruling contains a reasoned explanation for my action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the inclusion in the posted ruling of certain kinds of confidential information. To do so, Vaccine Rule 18(b) provides that each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the ruling will be available to the public. *Id.*

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2006)) [hereinafter "Vaccine Act" or "the Act"]. Individual sections references hereafter will be to § 300aa of the Act.

acellular-pertussis ("TdaP") vaccine on May 15, 2012, and that this alleged injury persisted for more than six months.

Based upon her review of the petition and supporting documents, Respondent requests that I dismiss this case because Mr. Grieshop (in her reading of the evidence) cannot establish that he suffered from an injury lasting for more than six months after administration of the vaccine. Resp't's Rule 4(c) Report and Motion to Dismiss, filed May 30, 2014 (ECF No. 8) at 12 [Rule 4(c) Report]; *see also* § 11(c)(1)(D)(i). For the reasons outlined below, Respondent's motion is denied.

I.      **Factual Background**

On May 15, 2012, Michael Grieshop (then 30 years old) received the TdaP vaccine in his left arm from Travel Services, LLC in Dublin, Ohio in anticipation of an upcoming trip to Tahiti. Pet'r's Ex. 1 at 1. Immediately following administration of the vaccine, Petitioner reported feeling "severe pain, redness, and swelling" at the injection site and in his left shoulder. Pet'r's Ex. 5 at 1 [Grieshop Affidavit]. Additionally, Petitioner alleges that within 48 hours of receiving the vaccine, he felt weakness in his left shoulder and arm. *Id.*

About a week later, Mr. Grieshop called Travel Services to inform them that he was experiencing such symptoms, and was advised to consult his physician and complete a Vaccine Adverse Event Reporting System report. Pet'r's Ex. 1 at 1. During that call, Petitioner specifically reported that he lifted weights a few days after his vaccination but was unable to do left arm curls using the thirty pounds of weight that he normally lifted. *Id.* Thereafter, on May 23, 2012, Petitioner went to see Jeannine Hughes, MD at Westerville Family Physicians in Westerville, Ohio. Pet'r's Ex. 2 at 11. Mr. Grieshop reported to Dr. Hughes that he had been experiencing arm weakness ever since he received the TdaP vaccine.[3] *Id.* Although Dr. Hughes was unable upon an initial examination to detect any strength difference between his right and left arms, she encouraged him to scale back his workouts in order to give less stress to his left side. *Id.*

---

[3] The medical records from this visit appear to indicate that Petitioner received the DTaP vaccination (Pet'r's Ex. 2 at 11), although according to contemporaneous medical records from the date that the vaccination was administered, Petitioner actually received the TdaP vaccination (Pet'r's Ex. 1 at 1).

Although Mr. Grieshop appears to have been generally healthy prior to vaccination, he had sought care from a chiropractor regarding issues with his hip, neck, and back in the months preceding receipt of the vaccination in question, and he continued those chiropractor visits after receipt of the TdaP vaccine. During a visit to his chiropractor, Ryan M. Zullo, DC at Amerihealth Chiropractic in Lewis Center, Ohio on May 24, 2012, Petitioner indicated that (in addition to pain he had been experiencing before vaccination) he was experiencing weakness in his left arm, which he felt was now only at 50 percent of its pre-vaccination strength. Pet'r's Ex. 3 at 2-3, 13. Mr. Grieshop complained of similar symptoms during a subsequent chiropractic visit on June 19, 2012. *Id.* at 3.

In addition to chiropractic care, Petitioner saw other healthcare providers regarding the symptoms that he reported experiencing in the months following his vaccination. Thus, on June 2, 2012, Petitioner was seen by Michael Cannone, DO at OrthoNeuro in Westerville, Ohio, at which time he reported pain, feeling of instability, and weakness in his left arm (all of which were exacerbated by heavy lifting). Pet'r's Ex. 4 at 10. Upon physical examination, Dr. Cannone observed that Mr. Grieshop displayed a "little bit of weakness with resisted abduction and forward flexion." *Id.*

Dr. Cannone subsequently referred Mr. Grieshop to Martin T. Taylor, DO, PhD (a neurologist in the same medical group as Dr. Cannone) for a consultation to evaluate Petitioner for neurologic or neuromuscular injury. *Id.* Petitioner saw Dr. Taylor on June 18, 2012, and at that time he reported that he had experienced mild soreness following receipt of vaccination and "then within 2 days he noticed some definite weakness in the biceps, in the shoulder girdle, and some weakness in the elbow but not distally." *Id.* A physical examination performed during this visit revealed "[o]nly minimal weakness," which Dr. Taylor attributed to a possible "mild brachioplexopathy [that] could have occurred related to an immune response." *Id.* at 9.

Mr. Grieshop returned to Dr. Taylor on August 16, 2012, for a follow-up visit regarding his left arm weakness. Pet'r's Ex. 4 at 4. The examination and other studies performed on Petitioner at that time did not reveal any clear objective evidence of abnormality or neurologic problem, even though Petitioner reported no significant improvement in his symptoms from his prior visit. *Id.* at 5-6. Dr. Taylor therefore recommended that Mr. Grieshop pursue physical therapy for strengthening exercises. *Id.* at 4.

3

Nearly six months passed before Mr. Grieshop followed Dr. Taylor's advice. On February 6, 2013, Petitioner obtained an initial evaluation at the OrthoNeuro Center for Physical Therapy. Pet'r's Ex. 4 at 3. At this time, Mr. Grieshop reported to the physical therapist (not specifically identified in the medical records) that he had been doing exercises recommended to him by his chiropractor with minimal to mild improvements, but that he felt he was still not fully functioning. *Id.* Upon physical examination, some weakness and other abnormalities in Petitioner's left arm were in fact noted (including decreased muscle control and stability with resistance). *Id.* Based upon this physical examination (as well as Petitioner's complaints), the treater proposed that Mr. Grieshop undergo some kind of physical therapy. *Id.*

On May 20, 2013, Mr. Grieshop returned to see Dr. Taylor for a follow-up appointment regarding his ongoing left arm weakness. Pet'r's Ex. 4 at 1. Petitioner indicated at that time that although he had gone through physical therapy and was in the habit of performing some of the exercises he had learned, he was still experiencing weakness in his left bicep and deltoid. *Id.* Upon examination, however, Dr. Taylor found that Petitioner had "normal bulk and tone in the upper extremities," and that he did "not really [have] any significant weakness *with the exception* of minimal giving way on left abduction." *Id.* (emphasis added).

Petitioner maintains that he has continued to experience weakness, pain, and cramping in his left arm and shoulder on a daily basis since the spring of 2013, even though there is nothing in the medical record to corroborate such assertions.[4] Grieshop Affidavit at ¶16. His affidavit avers that, at a minimum, he experienced the same symptoms between his August 2012 visit with Dr. Taylor and his February 2013 physical therapy evaluation. *Id.* at ¶¶ 10-13. Mr. Grieshop's wife, Stephanie, has also offered an affidavit that similarly maintains that he continued to experience his symptoms in this time period. *See generally* Pet'r's Ex. 6.

## II.     Procedural History

As noted above, Mr. Grieshop filed this petition on February 10, 2014. ECF No. 1. During a status conference on April 1, 2014, Petitioner asserted that all medical records relevant to his claim had been filed (ECF No. 6), and filed a Statement of Completion the next day (ECF

---

[4] For instance, medical records from Mr. Grieshop's visit to Westerville Family Physicians for a routine physical examination on August 26, 2013, do not include any notations regarding pain, weakness, or other abnormalities in his left arm and shoulder. Pet'r's Ex. 2 at 8.

No. 7). On May 30, 2014, Respondent filed her Rule 4(c) report indicating that, based on her analysis of the record, Mr. Grieshop's claim did not merit compensation – in particular because of his inability to satisfy the six-month requirement – and formally asking for dismissal of the claim on that basis. Rule 4(c) Report at 2 and 12. Respondent specifically questioned the nine-month period that had elapsed between Petitioner's August 16, 2012, visit to Dr. Taylor and his next visit to Dr. Taylor on May 20, 2013, observing that the only medical record from this period of time was from Petitioner's single visit to a physical therapist, and that the thrust of Mr. Grieshop's medical history after August 2012 suggests (despite his assertions to the contrary) that the effects of his alleged vaccine injury had resolved by that time. Rule 4(c) Report at 10.

On June 30, 2014, Mr. Grieshop opposed Respondent's dismissal request, arguing that the medical records in fact established that his symptoms had lasted more than six months. ECF No. 9 at 5. During a status conference in this case on July 16, 2014, I indicated that I would analyze Respondent's motion to dismiss as a motion for summary judgment. ECF No. 14. Thus, prior to ruling on the motion, I provided Petitioner with an opportunity to further support his claim with evidence regarding (a) the fact of his injury, and (b) that his injury lasted more than six months. ECF No. 14.

In response to my request for additional evidence regarding whether the six month requirement was satisfied, Petitioner submitted only the affidavit of Stephanie Grieshop, his wife, which was filed on October 1, 2014. Pet'r's Ex. 6 (ECF No. 11). Thereafter, I held a status conference in this case on January 26, 2015, at which time I urged the parties to engage in settlement negotiations. ECF No. 16. Such settlement negotiations were not successful (ECF Nos. 17-19), and therefore it is now appropriate to rule on Respondent's pending motion.

### III. Relevant Legal Standards

Because (as I previously informed the parties) I am treating Respondent's motion as one for summary judgment,[5] evaluation of its merits requires application of Rule 56 of the Rules of

---

[5] Respondent's Rule 4(c) Report does not cite the analytical standard applicable to her dismissal request. I have opted to treat this as a motion for summary judgment because in so moving, Respondent is pointing to the evidence in the record to make her argument, and in effect is asserting that, based on the existing record, it is an undisputed question of fact that Mr. Grieshop cannot meet the "six-month requirement" set forth in Section 11(c)(1)(D)(i) of the Vaccine Act. It is therefore reasonable to apply the legal standards applicable to summary judgment – even though the motion does not follow in precise form the requirements for such a motion under the Court of Federal Claims's

5

the United States Court of Federal Claims ("RCFC") (which is applied to Vaccine Program cases in accordance with Vaccine Rule 8).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c) ("[a] motion for summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."); *see also Jay v. Sec'y of Health & Human Servs.*, 998 F.2d 979, 982–83 (Fed. Cir. 1992) (motion for summary judgment should be treated the same way in vaccine cases as it is in other Court of Federal Claims cases). For purposes of summary judgment, there is no "genuine issue of material fact" when the evidence presented is insufficient to permit a reasonable finder of fact to find in favor of the non-moving party (in this case, Petitioner), and the moving party (in this case, Respondent) bears the burden of demonstrating absence of all genuine issues of material fact. *Jay*, 998 F.2d at 982–83. When ruling on a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in favor of the non-moving party. *Id.*

Special masters have on occasion addressed the appropriateness of summarily dismissing petitions that fail to meet the Vaccine Act's "six month requirement" as set forth in Section 11(c)(1)(D)(i), which states that a petitioner must establish that he "suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Dismissal under such circumstances is not appropriate if it appears the parties reasonably contest the length of time that petitioner has suffered from the effects of his alleged vaccine injury. *See, e.g.*, *Faup v. Sec'y of Health & Human Servs.*, No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015) (denying Respondent's motion for summary judgment in a case involving juvenile idiopathic arthritis; with regard to whether the six month requirement was satisfied, "one can suffer from a disease without exhibiting any clinical signs thereof"); *Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (indicating that there was "a set of circumstances which, if proven at hearing and connected to a medical or scientific theory of

---

rules – and in particular the requirement that a movant establish through record citation that a fact is undisputed. *See* RCFC 56(c)(1)-(4).

causation could allow Petitioners to prevail on the merits," and thus the petitioners had "clear[ed] the relatively low hurdle presented by a motion to dismiss" where the individuals who was allegedly injured was still under the medical care of a neurologist at the six-month point and there were medical records from that period of time which continued to document some symptoms of the alleged injury).

**IV. Analysis**

The six month requirement is a threshold factor applicable to many Vaccine Program petitioners.[6] *Cloer v. Sec'y Health & Human Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011) (*en banc*) (six month requirement is a "petition content requirement intended to restrict eligibility to the compensation program" and "a condition precedent to filing a petition for compensation."). It can be understood to be a "severity" requirement that flows directly from the policy goals of the Vaccine Act, obligating a petitioner to demonstrate that his injury is significant enough temporally to be actionable (assuming the other elements of causation can established). *Black v. Sec'y of Health and Human Servs.*, 33 Fed. Cl. 546, 551–52 (1995), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (six month requirement is "rough and inexact" but has some logic to it, so a claimant "who suffers an injury for four months and then recovers . . . is obviously not eligible for the Program").

Here, Mr. Grieshop unquestionably received the TdaP vaccine on May 15, 2012, and he therefore must show that his alleged injuries lasted more than six months thereafter from onset of his symptoms. *Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset). The treatment record, coupled with Mr. Grieshop's petition and affidavit, suggests onset of his alleged symptoms began within 48 hours of receipt of the TdaP vaccine – or by no later than May 17, 2012 – so he logically must demonstrate that his left arm and shoulder injury was extant as of November 17th of that same year.

---

[6] Section 11(c)(1)(D) sets forth three severity prerequisites applicable to different kinds of petitioners alleging non-table injuries, depending on their circumstances. Thus, Section 11(c)(1)(D)(ii) applies to individuals who allegedly died from administration of the vaccine in question, while Section 11(c)(1)(D)(iii) applies to petitioners who suffered from injuries "which resulted in inpatient hospitalization and surgical intervention." Plainly these prerequisites are inapplicable to Mr. Grieshop's claim.

To satisfy the six month requirement, "[a] potential petitioner must do something more than merely submit a petition and an affidavit parroting the words of the statute." *Faup*, 2015 WL 443802, at *3 (quoting *Black*, 33 Fed. Cl. at 550). Rather, a petitioner is required to "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . . ." *Id.* (internal quotations omitted). Although a petitioner cannot establish the length or ongoing nature of an injury merely through his self-assertion, the fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from his or her alleged injury. *See, e.g.*, *Herren*, No. 13-1000V, 2014 WL 3889070, at *3 (finding that a petitioner suffered from residual symptoms that due to their mild nature did not require medical care).

Respondent's motion to dismiss is largely based on the nine-month gap between Mr. Grieshop's visit to Dr. Taylor in August of 2012 and his next follow-up visit with Dr. Taylor in May of 2013. Because Dr. Taylor appeared to opine that he could not find anything wrong with Mr. Grieshop as early as three months after the TdaP vaccination – an opinion he echoed later – Respondent reasons that, even assuming Petitioner was injured in some way, the injury subsided well before six months had passed from the time Petitioner first reported left shoulder and arm pain. Rule 4(c) Report at 9-11.

Petitioner relies on a variety of evidence in opposing Respondent's motion. The strongest evidence he marshals are the medical records from Petitioner's visit to the physical therapist in February of 2013. Pet'r's Ex. 4 at 3. At that time, the physical therapist noted that Petitioner had some abnormalities and weakness, including decreased muscle control and decreased stability with resistance. *Id.* These are contemporaneous findings the therapist made – not simply Mr. Grieshop's reporting of how he felt – and are therefore properly afforded some weight. And even when Petitioner finally returned to Dr. Taylor in May of 2013, despite his overall assessment that he could not corroborate Petitioner's reports of continued arm and shoulder problems, he too acknowledged the presence of some weakness, indicating that Petitioner had "minimal giving way on left abduction." *Id.* at 1. While such evidence is not especially strong proof (and will ultimately be weighed against other record evidence that suggests both that Mr. Grieshop's treaters did not conclude he had been injured as he alleges), I must credit its truthfulness for

purposes of evaluating Respondent's motion, and it supports Mr. Grieshop's allegations regarding the length of time his symptoms lasted.

The affidavits submitted by Mr. and Mrs. Grieshop offer some corroboration of his claim that he continued to experience symptoms related to his alleged injury more than six months post-vaccination, and also attempt to explain why he did not seek additional medical treatment during the August 2012 – February 2013 gap. *See generally* Pet'r's Exs. 5 and 6. Such evidence is of course inherently less probative than the contemporaneous medical records, and would be by itself insufficient to create a triable issue of fact. *Lamell v. Sec'y of Dep't of Health & Human Servs.*, No. 90-3607V, 1991 WL 161079, at *3 (Fed. Cl. Spec. Mstr. Aug. 5, 1991) (summary judgment was appropriate in a case where the "only evidence of an adverse reaction within the statutory time frame is the affidavits of the parents describing symptoms, which, even considered in light most favorable to petitioners, are inadequate to establish a Table injury."). But these affidavits do help flesh out Petitioner's allegation about the temporal length of his symptoms.[7]

Based on all of the above, I find that Respondent has not demonstrated that it is undisputed that Mr. Grieshop's alleged left arm and shoulder injuries did not persist more than six months from mid-May of 2012 until November of that year. Whether or not Petitioner can ultimately prove his case, factually there is record support for the alleged injury lasting at least six months, and therefore I cannot grant summary judgment on that narrow basis. To be sure, Respondent has highlighted significant weaknesses in Petitioner's case. And even if Mr. Grieshop demonstrates causation, it does not appear at the present time that he will be entitled to significant damages, given the evidence suggesting that his injuries were mild at best and/or have resolved since the time of vaccination. But close calls are to be decided in a petitioner's favor in Vaccine Program cases, and I find here there is just enough evidence in the record to make dismissal inappropriate at this time.

---

[7] For example, Mrs. Grieshop's affidavit explains that Mr. Grieshop did not seek medical care in late 2012 and early 2013 because he was attempting to live with the arm and shoulder weakness, and was otherwise performing exercises at home to strengthen his shoulder. Pet'r's Ex. 6 at ¶ 7. Such statements are corroborated by notations in Petitioner's medical records which reveal that he contemporaneously informed treaters that he was attempting to manage his symptoms on his own. *See* Pet'r's Ex. 4 at 1 and 3.

## CONCLUSION

For the reasons stated above, I hereby **DENY** Respondent's motion. The parties shall contact chambers to schedule a status conference in this matter, at which time a deadline for any expert report(s) to be filed by Petitioner will be established.

**IT IS SO ORDERED.**

/s/Brian H. Corcoran
Brian H. Corcoran
Special Master